UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGINALD CHAPMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Case No. 09-CV-3681 |
| MARCUS HARDY[1], Warden, | ) |
| Statesville Correctional Center, | ) Judge John W. Darrah |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Reginald Chapman, proceeding *pro se*, has filed a Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254. For the reasons provided below, his Petition is denied. The Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

In 1998, Petitioner Reginald Chapman was convicted by a jury in Cook County Circuit Court on two counts of first-degree murder: one count for the murder of his ex-girlfriend, Angela Butler, and one count for the murder of his son with Angela, Christopher Butler. *People v. Chapman*, 743 N.E.2d 48, 57 (Ill. 2000). Petitioner does not challenge the statement of facts set forth in his state-court proceedings. The

---

[1] Marcus Hardy replaced Frank Shaw as the warden at Stateville Correctional Center, where Petitioner is imprisoned, and is thus the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Hardy is hereby substituted as Respondent.

following facts are from the Illinois Supreme Court's order denying Petitioner's post-conviction appeal.[2]

On August 31, 1994, Angela Butler was reported missing. (*Id.* at 58.) A witness at trial testified that Angela and Christopher had been seen last on August 27, 1994, leaving a grocery store parking lot with Petitioner. (*Id.*) On September 4, 1994, a body, later identified as that of Angela Butler, was found floating in the Calumet Sag Channel in Alsip, Illinois; the body was wrapped in electrical cords and attached to free weights. (*Id.*) Pursuant to an investigation into Angela's death and Christopher's disappearance, police visited Petitioner in his apartment on September 9, 1994. (*Id.* at 59.) Petitioner admitted police into his apartment, where he waived his *Miranda* rights and signed a consent form, permitting police to search his apartment and vehicle. (*Id.*) Petitioner was then brought to the police station for further questioning later that morning; he again waived his *Miranda* rights. (*Id.*) Police questioned Petitioner about owning weightlifting equipment: Petitioner first denied owning any such equipment; then he stated that he had such equipment but sold it, and finally he asserted that he had given his weightlifting equipment to his brother. (*Id.*) A second interview occurred later that day, around 11:00 a.m. on September 9, 1994; after Petitioner again waived his *Miranda* rights, police questioned Petitioner about Christopher's and Angela's whereabouts and showed Petitioner photos of them: Petitioner stated "that he did not know where they were but that they were together." (*Id.* at 61.) Police then showed Petitioner a photograph of

---

[2] In a state-court *habeas corpus* proceeding, a determination of a factual issue made by a state court shall be presumed correct. 28 U.S.C. § 2254(e)(1). The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

2

Angela's dead body, and Petitioner began to cry – police then terminated this interview. (*Id.*) Police attempted to interview Petitioner twice more that day, after he again waived his *Miranda* rights; Petitioner started to cry each time, and police stopped questioning him. (*Id.*) The following day, September 10, 1994, around 11:30 a.m., Petitioner again waived his *Miranda* rights and was interviewed by Assistant State's Attorney Pierre Tismo: "When Tismo asked how Angela's body ended up in the Calumet Sag Channel, defendant responded that he put her there. When asked where Christopher was, defendant put his head down and cried. Defendant stated that authorities could find Christopher where they found Angela." (*Id.*) Two days later, police discovered Christopher's decomposed body in the Calumet Sag Channel, tied to forty pounds of weights with electrical cords. (*Id.* at 59.) Petitioner was thereafter charged with two counts of first-degree murder. (*Id.* at 58.) Petitioner moved to suppress the statements he made to investigators prior to trial. The trial court found that Petitioner was advised of his *Miranda* rights and waived them numerous times and that his confession was not coerced. (*Id.* at 63.)

The case proceeded to trial. Petitioner's girlfriend, Tiffany Brownlee, testified that the day after Angela and Christopher were last seen alive, Brownlee visited Petitioner's apartment, where she watched Petitioner clean out his trunk, and saw Petitioner's home in disarray. (*Id.* at 59.) Brownlee testified that a long orange electrical cord and weightlifting equipment were missing from Petitioner's apartment. (*Id.* at 60.) Brownlee further testified that before police entered Petitioner's apartment for the first time, Petitioner asked Brownlee to help establish his alibi. (*Id.*) A crime scene

3

investigator also testified at trial, attesting to the discovery of blood found in the trunk of Petitioner's car, as well as bloodstains found in Petitioner's apartment, which matched Angela's DNA. (*Id.*) A medical examiner testified that Angela suffered a blunt force trauma to the head and a neck fracture, appearing to be caused by strangulation – her cause of death; the examiner also testified that Christopher died of suffocation. (*Id.*) A jury convicted Petitioner of murdering both Christopher and Angela and determined he was eligible for the death penalty due to the exceptionally heinous nature of the crimes. (*Id.*)

Petitioner waived his right to be present at the aggravation and mitigation phase of his sentencing hearing, as well as his right to a jury at that hearing. (*Id.*) During this hearing, several aggravating factors came to light, namely, the history of Petitioner's abuse of Angela Butler. (*Id.* at 87.) According to a witness, in one instance, Petitioner beat Angela for several hours and told her that "if he couldn't have her, that nobody else would. He would kill her." (*Id.*) Petitioner then purportedly placed a barbell on Angela's chest, leaving her unable to move for several hours, while Petitioner left the apartment with Christopher. (*Id.* at 87-88.) In July 1994, Angela also contacted the police to report Petitioner's abuse. (*Id.*) Petitioner's death sentence was commuted to a term of life in prison in 2003. (*People v. Chapman*, No. 1-09-1945 (Ill. App. Ct. Dec. 20, 2010) (ruling on second collateral appeal)).

Since Petitioner's trial and conviction in 1998, Petitioner has filed a lengthy succession of appeals. First, Petitioner filed a direct appeal, whereby Petitioner conceded to murdering Angela and Christopher but argued that he killed them on impulse and

because of emotional distress, not after deliberate calculation. (Defendant-Appellant's Brief, *People v. Chapman*, No. 85332, June 8, 1999, at 70.) On this direct appeal, the Illinois Supreme Court considered Petitioner's arguments of: (1) the trial court's error in denying his motion to suppress some statements made to police; (2) the lack of probable cause in his arrest; (3) the admissibility of crime scene and autopsy photographs at trial; (4) the trial court's error in denying Petitioner's request to give a *Prim* instruction to the jury regarding the requirement of a unanimous verdict; (5) the trial court's error in not appointing Petitioner two attorneys to represent him; (6) the trial court's error in not appointing a new attorney to argue his *pro se* post-trial motion, which alleged that his trial counsel was ineffective; and (7) that errors were made with regards to Petitioner's sentencing. (*People v. Chapman*, 743 N.E.2d 48 (Ill. 2000).) The Illinois Supreme Court, upon reviewing his appeal, affirmed Petitioner's convictions and death sentence. (*Id.*)

While this direct appeal was pending, Petitioner filed a petition for state post-conviction relief, arguing that his trial counsel was ineffective in failing to use two consent-to-search forms to impeach a police officer's testimony and that his appellate counsel was ineffective in failing to present a *Strickland* claim based on that error by trial counsel. The Circuit Court of Cook County denied this petition for post-conviction relief, ruling that neither counsel was ineffective. (*People v. Chapman*, No. 94-CR-24898, Post-Conviction Proceedings, Oct. 20, 2006.) Petitioner appealed this decision, and the appellate court affirmed the trial court's ruling. (*People v. Chapman*, No. 1-06-3261, Ill. App. Ct., Dec. 22, 2008.) The Illinois Supreme Court denied Petitioner's leave

to appeal the Illinois Appellate Court's decision on March 25, 2009; the United States Supreme Court also denied *certiorari*. (*People v. Chapman*, Ill. No. 107969; *Chapman v. Illinois*, 130 S.Ct. 99 (2009).)

Next, Petitioner filed a *pro se* petition, seeking relief from judgment under Section 2-1401 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1401, and sought leave to file a successive post-conviction petition. (Respondent's Ex. N.) Petitioner alleged: (1) that his confession should have been suppressed; (2) that he is actually innocent; (3) that his trial counsel operated under a conflict of interest; (4) that the trial and appellate court erred in dismissing his original petition; and (5) a restatement of all claims he raised on direct appeal and in his first post-conviction petition. The court found that Petitioner's petition under Section 2-1401 was frivolous and patently without merit; the court also denied Petitioner leave to file a successive post-conviction petition. (*People v. Chapman*, 96-CR-2498, Post Conviction Order, June 25, 2009.) The appellate court affirmed the trial court's judgment, and the Illinois Supreme Court denied Petitioner's leave to appeal. (*The People of the State of Illinois v. Chapman*, No. 1-09-1945, Ill. App. Ct., Order, December 20, 2010; *People v. Chapman*, No. 111797, Ill., March 30, 2011.)

Despite these rulings, Petitioner filed a *second* petition, seeking relief under Section 2-1401 of Illinois Rules of Civil Procedure and seeking to reassert all previous claims and again requesting leave to file a successive post-conviction petition; this, too, was denied. (*Chapman v. Illinois*, No. 94-CR-24898-1, Order, August 1, 2010.) Petitioner also filed a complaint pursuant to the Illinois *Habeas Corpus* Act, 735 ICLS

6

5/10-101; the trial court denied this complaint, as well, and denied Petitioner leave to file a successive post-conviction petition. (*Id.*) The Illinois Appellate Court affirmed. (*People v. Chapman*, No. 1-10-2684, Ill. App. Ct., Nov. 7, 2011.) The Illinois Supreme Court has not yet ruled on Petitioner's petition for leave to appeal this decision. (Answer at 12.)

In this Court, Petitioner filed a petition for writ of *habeas corpus* on June 17, 2009. Counsel was appointed to represent Petitioner but withdrew after Petitioner stated to the Court that he did not feel counsel properly presented his claims in his amended Petition. (Dkt. Entry 55.) In Petitioner's *habeas corpus* Petition, he asserts fifteen distinct claims:[3]

I. Police coerced Petitioner's confession by showing him photographs of Angela's body (grounds seven and nine);

II. Petitioner's trial counsel was ineffective in:
    A. failing to use police reports to impeach State's Attorney Tismo's testimony about Petitioner's September 10 confession (ground twenty-one);
    B. revising Petitioner's suppression motion to omit reference to Lt. Martin (ground five);
    C. failing to investigate "bank records," "duty log books," Petitioner's "claim of innocence," and "Angie's friend that lived with us" (ground eighteen);
    D. agreeing to correct errors in the suppression hearing transcript (ground five);
    E. closing argument (grounds four, five, eight, nineteen, and twenty-five); and
    F. failing to "challenge" Denise Thigpen's sentencing hearing testimony (ground five);

---

[3] Note in Petitioner's filed Petition for writ of *habeas corpus*, he lists twenty-six separate grounds for his petition; due to the confusing and somewhat disorganized nature of his Petition, as well as the repetitive nature of his claims, the Court will analyze the claims under the structure suggested in Respondent's Answer.

7

III. Petitioner's appellate counsel was ineffective in:
    A. "misrepresent[ing]" Petitioner's direct appeal issues relating to his right to counsel and Fourth Amendment claims (ground eleven); and
    B. failing to argue that newspaper coverage of Petitioner's crimes entitled him to a mistrial (ground twelve);

IV. Petitioner's waiver of his right to remain silent was invalid because police failed to inform him that they suspected him of Angela's murder (ground twenty);

V. the evidence was insufficient to convict Petitioner of Christopher's murder (grounds eight, thirteen, fourteen, and seventeen);

VI. Petitioner's waiver of his right to be present during the aggravation/mitigation phase of his capital sentencing hearing was invalid because it was made under "duress" (i.e., sleeplessness caused by the conditions of his pretrial confinement) (ground sixteen);

VII. newspaper coverage of Petitioner's crimes deprived him of due process (ground twelve);

VIII. part of the State's evidence was "false" (grounds two and seven) and "flawed" (ground three);

IX. Petitioner's Fourth Amendment rights were violated by his arrest (grounds six and twenty), the delay between his arrest and his probable cause hearing (ground fifteen), and the search of his apartment (ground twenty-two);

X. "duty log books" from a police station where Petitioner was held are "missing" (ground ten);

XI. errors occurred in Petitioner's state post-conviction proceeding (grounds five, eight, seventeen, and nineteen);

XII. Petitioner's confession should have been suppressed under the *McNabb-Mallory* rule (ground twenty-six);

XIII. police violated Petitioner's right to counsel under the Illinois Constitution by continuing to question him after an attorney, seeking to represent Petitioner, placed a telephone call to the police station where he was being held (ground twenty-four);

XIV. Petitioner is actually innocent (ground one); and

XV. "[g]eneral verdict forms need to be specific" (ground thirteen).

## LEGAL STANDARD

A federal court will not grant *habeas corpus* relief on any claim adjudicated on the merits by a state court unless the state-court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A writ of *habeas corpus* may issue under the "contrary to" clause of 28 U.S.C. § 2254(d) by two means. First, the writ may issue if the state court applied a rule different from the governing law set forth by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (*Williams*). Second, the writ may issue under the "contrary to" clause if the state court decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 406.

The court may issue a writ under the "unreasonable application" clause of § 2254(d) if the state court correctly identifies the governing legal principle of the United States Supreme Court but unreasonably applies the principle to the facts of the particular case. *Id.* at 407. The court may only issue a writ of *habeas corpus* if it determines that the state court's application of federal law was "objectively unreasonable." *Id.* at 365. This is a difficult bar for a petitioner to reach because "unreasonable" is considered "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003) (citing *Williams*, 529 U.S. at 411).

The burden of proof falls on the petitioner, who must show he is entitled to relief under any theory. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (*per curiam*). The federal court deferentially reviews the decision of the last state court. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). State-court factual findings are presumed to be correct unless the petitioner rebuts this presumption with "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).

Before seeking a writ of *habeas corpus* in federal court, a petitioner must first exhaust all remedies available to him in state court. 28 U.S.C. § 2254(b)(1)(A). A federal court is precluded "from reaching the merits of a *habeas* claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (*Perruquet*). To avoid the latter form of procedural default, the petitioner is required to assert his claim at every level in the state-court system, "including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (*O'Sullivan*)). A *habeas* petitioner who exhausts state-court remedies without properly asserting his federal claim at each state-court level has procedurally defaulted that claim. *Id.* "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois

Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (*Guest*) (citing *O'Sullivan*, 526 U.S. at 848).

A petitioner may succeed despite procedural default with a demonstration of (1) cause for the default and prejudice or (2) that ignoring the default is necessary to prevent a fundamental miscarriage of justice. *Id.* In instances of procedural default, the first exception requires the petitioner to "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (*McCleskey*) (quoting *Murray v. Carrier*, 477 U.S. 478, 488) (1986) (*Murray*)). Once cause is established, "he must also show 'actual prejudice' resulting from the errors of which he complains." *McCleskey*, 499 U.S. at 493 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982) (*Frady*)). Prejudice is established by showing the violation of the petitioner's federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

The second means for circumventing a procedural default – showing a fundamental miscarriage of justice – is a very narrow exception and requires a demonstration that the petitioner's claim caused the conviction of an innocent person. *McCleskey*, 499 U.S. at 468. To establish that a miscarriage of justice would result, the petitioner must show he is actually innocent of the offense for which he was convicted. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995) (*Schlup*). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of … new evidence." *Id.* at 327.

## ANALYSIS

First, Petitioner's Claim I will be disposed of on its merits, as Petitioner failed to make a showing for *habeas* relief under either prong of the *habeas corpus* bases stated in 28 U.S.C. § 2254(d). Petitioner's Claims II through VII are disposed of due to Petitioner's procedural default, and Claims VIII through XV are disposed of because they fail to allege violations of the federal Constitution.

### *Claim I: Petitioner's Confession*

Petitioner argues that the police omitted or changed evidence to extract Petitioner's confession (without providing any examples) in Ground 7 of his Petition and that he had a "collapse of mental will" during his interrogation with State's Attorney Tismo in Ground 9 of his Petition. Essentially, Petitioner argues his confession was involuntary. Petitioner raised this claim in state court, arguing "he was psychologically coerced due to being presented with photographs of Angela and he cried and did not speak to the police on Friday afternoon and night." (Respondent's Ex. C at 34.)

To succeed on this claim of a coerced confession, Petitioner must show that either: (1) the state court contradicted or unreasonably applied the law of the Supreme Court, or (2) the state court's determination that his confession was voluntary was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

#### No Unreasonable or Contradictory Application of Supreme Court Law

In order to show that a confession is involuntary, there must be a finding of coercive police activity, meaning a determination of whether the police "overreached" in extracting a confession. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). The Supreme

Court has never held that showing a suspect a photograph of a victim is a coercive activity. Other Circuits have, to the contrary, found that showing a photograph of a victim to a suspect is *not* coercive behavior. *See United States v. Sanchez*, 614 F.3d 876, 885 (8th Cir. 2010); *Derrick v. Peterson*, 924 F.2d 813, 819 (9th Cir. 1990). The state court did not contradict Supreme Court authority. Moreover, with no Supreme Court cases based on "materially indistinguishable facts," the state court's view of Petitioner's confession is not contrary to federal law.

Petitioner also makes no showing as to how the state court's determination on this issue (that his confession was voluntary and not coerced by the police officers' showing him photographs of Angela's body) was unreasonable. Therefore, Petitioner is not entitled to *habeas* relief on this claim.

*Claim II  VII: Procedural Defaults*

Six of the claims put forth by Petitioner fail because they are procedurally defaulted. Claims II through VII of Petitioner's *habeas* Petition (which include what he identifies as Grounds 4, 5, 8, 11-14, 16-21, and 25 in his hand-written Petition) are procedurally defaulted because Petitioner failed to present these issues at every level in the state-court system. *O'Sullivan*, 526 U.S. at 845. First, Petitioner argues his trial counsel and his appellate counsel were ineffective for various reasons (Claims II and III). When Petitioner alleged his ineffective-counsel claims at the state level in his post-conviction proceeding, he based these allegations on his trial counsel's failure to impeach an arresting officer's testimony. (*People v. Chapman*, No. 94-CR-24898, Post-Conviction Proceedings, Oct. 20, 2006.) Therefore, the new bases of ineffective counsel

13

Petitioner submits in his *habeas corpus* petition are procedurally defaulted: Petitioner never previously brought these issues through all levels of the state-court system of review. "A petitioner 'must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim.'" *Rittenhouse v. Battles*, 263 F.3d 689, 695-96 (7th Cir. 2001) (quoting *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001)). Petitioner has thus forfeited his right to a federal review of the allegations in Claims II and III.

Similarly, Claims IV, V, and VI are also procedurally defaulted because these claims were not ever raised in Petitioner's direct appeal or any other attempts of post-conviction petitions. Claim VII (identified as Ground 12 in Petitioner's *habeas* Petition) alleges the media and newspaper coverage of Petitioner's crimes deprived him of due process: this claim was incorporated in Petitioner's second petition for post-conviction relief but not raised in subsequent filings in state court. Failing to have raised this issue at every level in state court, this claim is also procedurally defaulted. *See Guest*, 474 at 930.

It is clear Petitioner has procedurally defaulted on these claims. Moreover, Petitioner has failed to demonstrate, or even allege, either cause for the defaults or that ignoring the defaults is necessary to prevent a fundamental miscarriage of justice. *Id.* Therefore, Claims II through VII of Petitioner's *habeas corpus* Petition fail.

*Claims VIII-XV: Fail to Allege Constitutional Violations*

Finally, the remaining claims in Petitioner's *habeas corpus* Petition fail because these claims do not allege constitutional violations, as required by 28 U.S.C. 2254(d).

Claim VIII (Grounds 2, 3, and 7 of the Petition) allege the State's use of false or flawed evidence, including that the police officers committed perjury during his trial and that the DNA evidence used against him was "flawed." A baseless allegation of perjury without additional proof is not enough to support a claim for *habeas corpus* relief: "[t]he clearly established Supreme Court precedent demands proof that the prosecution made *knowing* use of perjured testimony." *Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999) (emphasis added). Petitioner does not contend that his prosecutors knowingly used perjured testimony against him; even an allegation of the use of perjured testimony without more is not necessarily a violation of his federal rights. *See United States ex rel. Williams v. Walker*, 535 F.2d 383, 387 (7th Cir. 1976). This claim does not allege a violation of Petitioner's constitutional rights and therefore fails.

Petitioner alleges Fourth Amendment violations in Claim IX (Grounds 6, 15, 20, and 22 in the Petition). These allegations are not cognizable on federal *habeas* relief where the petitioner has had a full and fair trial. *See Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (providing, "Under *Stone*, Fourth Amendment violations are *generally* not cognizable on federal habeas, but they *are* cognizable when the State has failed to provide the *habeas* petitioner "an opportunity for full and fair litigation of a Fourth Amendment claim.") (citing *Stone v. Powell*, 428 U.S. 465 (1976)). Claim IX of the *habeas corpus* Petition is denied.

Petitioner further alleges in Claim X (Ground 10 of his Petition) that the "duty log books" from a police station where Petitioner was held during his interrogation are now missing, though Petitioner does not allege the log books were purposely destroyed by the

15

State in order to illegally suppress evidence. Such a claim is not cognizable in a *habeas* proceeding. The Supreme Court has held: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also McCarthy v. Pollard*, 656 F.3d 478 (7th Cir. 2011). Petitioner alleges no constitutional or recognized violation of due process; this claim, too, fails.

Additionally, in Claim XI, Petitioner alleges errors occurred in his state post-conviction proceedings (Grounds 5, 8, 17, and 19 of his Petition), including so-called "unwarranted early dismissal" of a post-conviction proceeding. "Federal *habeas corpus* relief is available only to persons being held in state custody in violation of the Constitution or federal law; it is not a remedy for errors of state law." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). Any errors Petitioner alleges to have occurred in his state collateral review may not create a basis for federal *habeas corpus* relief. *Id.*

Petitioner further alleges his confession was inadmissible "due to *Corley v. United States*" in Claim XII (Ground 26 of his Petition). Petitioner appears to invoke the *McNabb-Mallory* rule, addressed in *Corley v. United States*, 129 S.Ct. 1558 (2009). However, the *McNabb-Mallory* rule, which seeks to exclude confessions made during an unreasonable period of detention, is a rule of criminal procedure. *Van-Ermen v. Burke*, 398 F.2d 329, 330 n.1 (7th Cir. 1968) (finding the rule inapplicable in *habeas corpus* proceedings because "it is based on court enforcement of the congressional mandate found in Rule 5(a) of the Federal Rules of Criminal Procedure . . . . [T]he rule is not of

constitutional dimensions. It does not reach to invalidate petitioner's conviction as being constitutionally infirm."). Petitioner's attempt to rely on the *McNabb-Mallory* rule fails, as it is not recognized in the scope of a petition for writ of *habeas corpus*.

Petitioner also seeks relief in Claim XIII, by claiming police violated his right to counsel under the Illinois Constitution by continuing to question him after an attorney, seeking to represent him, called the police station to find him (Ground 24 of his Petition). Because Petitioner alleges a claim based on state law, he has failed to allege a claim cognizable on federal *habeas* review. *See Perruquet*, 390 F.3d at 511 ("To say that a petitioner's claim is not cognizable on *habeas* review is thus another way of saying that his claim presents no federal issue at all.") (internal citation omitted). Because this claim is not cognizable on *habeas* review at the federal level, it fails.

Similarly, Claim XIV (Ground 1 of the Petition), Petitioner's claim of actual innocence (despite admitting guilt in his first direct appeal), is also not recognized as a basis for federal *habeas* relief. A claim of actual innocence is not, by itself, a constitutional claim. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). "A claim of actual innocence is relevant to determining whether a *habeas corpus* petition may be brought before a federal tribunal at all; it is not ordinarily cognizable in determining whether writ should issue." *Milone v. Camp*, 22 F.3d 693, 699 (7th Cir. 1994). Because Petitioner seeks to assert a claim of actual innocence as a substantive claim on its own, *habeas* relief is unwarranted.

Finally, Claim XV (Ground 13 of the Petition) alleges that error occurred because the "general verdict forms need[ed] to be specific." Petitioner seeks *habeas* relief on the

17

basis that the jury verdict forms at his trial did not permit the jurors to find him guilty as to one murder but not the other. Even if there were some error in the jury instructions and the use of the verdict forms, this is an insufficient basis for *habeas* relief. The Seventh Circuit has explained: "the Supreme Court, as well as this court, has been resolute in ruling that errors of state law, especially errors based on a trial court's evidentiary rulings or jury instructions, do not, in and of themselves, violate the Constitution." *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Therefore, this claim does not establish a constitutional violation, and Petitioner's claim for *habeas corpus* relief on this ground is denied.

Consequently, Petitioner's Claims VIII through XV are denied as they fail to state a cognizable claim for federal *habeas* relief.

### *Certificate of Appealability*

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the Court of Appeals under Federal Rules of Appellate Procedure 22. *See* Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court,

or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a *habeas* petitioner must demonstrate the denial of a constitutional right. This requires that the petitioner show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (*Slack*). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. As discussed above, Petitioner has failed to demonstrate the denial of a constitutional right as to Claim I and Claims VIII through XV.

Denying the certificate of appealability as to claims dismissed on procedural grounds is more complicated. Typically, when a *habeas* petition is dismissed on procedural grounds, a district court can issue a certificate of appealability if the underlying issue of the violation of a constitutional right has not been reached. To be granted the certificate of appealability in this situation, the petitioner must show that jurists of reason could debate whether the petition states a valid claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484. The petitioner must also show that jurists of reason could debate whether the district court was correct in its procedural ruling. *Id.* However, as is the case with regards to Claims II through VII, where a plain procedural

bar is present and a district court correctly invokes it to dispose of those claims, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Id.*

Petitioner has failed to make a substantial showing of the denial of a constitutional right in the instant Petition. Accordingly, a certificate of appealability shall not issue.

## CONCLUSION

For the reasons stated above, Reginald Chapman's Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability is not issued.

Date: 6-1-12

JOHN W. DARRAH
United States District Court Judge